| United States District Court | Southern District of Texas |
|---|---|

| | |
|---|---|
| Jose Armando Cortinas, § § Plaintiff, § § versus § § Cathy Steinbach, et al., § § Defendants. § | § § § § Civil Action H-08-0772 § § § § § |

## Opinion on Dismissal

Jose Cortinas sues Texas prison employees Cathy Steinbach, Dr. Betty Williams, Alfred Janacek, and Shanta Crawford for civil rights violations. The defendants move for summary judgment.

1. *Claims*

On March 23, 2006, the Ellis Unit Supervisor, Steinbach, ordered Cortinas to climb on top of an eighteen-wheeler flatbed truck to unload rolls of chain link fencing. She told Cortinas to hand off from the side of the trailer and onto a forklift driven by another inmate. Based on his training in protective equipment, Cortinas felt the manner of unloading was unsafe because it was raining. Cortinas said it would be safer if they used a lift truck, but Steinbach refused. While unloading, some wire got entangled in Cortinas's gloved hand. The wire rolled off the trailer, and pulled him off as well. He was thrown head first onto the ground from a height of four to six feet. At the time of the accident, Steinbach had gone back to her office and the truck driver was asleep leaving only an inmate overseeing the unloading, and another inmate to summon a supervisor for medical help.

Cortinas suffered a small hematoma on the forehead, other head injuries, a broken left forearm, torn left shoulder tendons, a torn rotator cuff, and a back injury, which a doctor said would require surgery. He also broke his ribs on the right side and he suffered a punctured and collapsed right lung. He is still having problems with his left shoulder. From March until December, Cortinas suffered excruciating pain because he could not stand to use his left arm and hand. His bone was set wrong and was not properly repaired until December 2006, and it still is not right.

Cortinas complained to the Medical Administration Office of the University of Texas Medical

Branch Hospital in Galveston (UTMB). The UTMB employee referred him to the unit prison medical department, where Physician's Assistant (PA) Shelby stated that "no money was allocated for the surgery so being it's not in the budget, it's not going to happen." Cortinas sent requests to the medical department before seeing PA Myuman, only to get nothing accomplished. Cortinas wrote several requests to see PA Nagal, who scheduled him to see an orthopedic surgeon. This took five or six months because, as medical personnel had earlier said: "the money hadn't been allocated for the surgery from the unit's budget." Cortinas wrote to Crawford and Dr. Williams about their deliberate indifference, only to be told to write his congressman or file a writ. Dr. Williams removed medical work restrictions. Although Cortinas initially received Tylenol 3, doctors later gave him only regular Tylenol or aspirin.

After eighteen months of severe pain, medical personnel took Cortinas back to UTMB for corrective surgery and everything that should have been fixed right the first time was rebroken and straightened out. He is still complaining about his left arm—he cannot lift it above his head and he cannot push or pull anything. The defendants refuse to do anything about the injury to his back, or the rotator cuff reconstruction, which is deliberate indifference to Cortinas's medical needs that prolongs his pain and inability to use his arms and hand.

2. *Unloading the Truck*

The Eighth Amendment standard is deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825 (1994). A defendant is deliberately indifferent when he knows an inmate faces a substantial risk of serious harm and disregards the risk by not taking reasonable measures. *Id.*, at 847. A defendant is not liable unless he knows of and disregards an excessive risk to inmate health or safety; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference. *Id.*

The defendants contend that unloading fence rolls by hand onto a forklift is not dangerous. Warden Janicek and Steinbach's affidavits show that fencing rolls are usually unloaded by hand. (22-1, p. 7). No prison safety rules require them to be unloaded with a boom truck, as Cortinas claims. *Id.* Steinbach has seen manual unloading of fencing rolls three to four times a year without incident. *Id.* She has unloaded them herself this way without risk. *Id.*, p. 2. While Cortinas unloaded, the forklift blades were level with the truck bed. *Id.* Cortinas received safety training before the unloading job in question. *Id.* The defendants' summary judgment evidence shows that unloading

fence rolls by hand did not put Cortinas at risk of serious injury.

In his summary judgment response, Cortinas contends he has established deliberate indifference by Steinbach. He told her how unsafe he felt in unloading the truck. He told her about the unstable footing, the wet conditions, and the way the bundles of fencing rolled as they came off the truck. He also told her that he had to climb on top of the fencing rolls to be able to unload them. He contends that what he told her gave Steinbach sufficient knowledge to be aware of the significant risk to Cortinas. He also says his claim for deliberate indifference in his complaint is only against Steinbach. He says he only mentioned the other individuals as part of his mental anguish, pain, and suffering resulting from Steinbach's poor judgment in ordering him to unload the fencing rolls.

The defendants' summary judgment evidence shows the absence of a material issue on Cortinas's claim on unloading the truck. Cortinas does not show that any defendant was aware of a substantial risk of serious harm to Cortinas.

3. *Medical Care*

The specific standard for a medical care claim is whether the plaintiff has suffered "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Allegations of negligence, medical malpractice, or even gross negligence, do not show deliberate indifference. *Hare v. City of Corinth, MS*, 74 F.3d 633 (5th Cir. 1996).

The medical records show the following. On the day of the accident, officers took Cortinas to the emergency room of East Texas Medical Center in Trinity, Texas. (22-1, p. 9; 22-1, p. 14-20). Doctors then transferred Cortinas to the UTMB. (22-1, p. 10). He stayed there for two weeks, where doctors treated him for pneumothorax and put his arm in a cast. (22-1, pp. 21-24). He had many appointments with specialists at UTMB after his initial stay. (22-1, pp. 2-4, 9-11; 22-2, pp. 9, 24; 22-3, pp. 4-5, 13; 22-4, p. 7; 22-5, pp. 9, 24; 22-6, pp. 2, 8-9, 14; 22-7, pp.1). The medical records and Cortinas's allegations show that prison medical personnel repeatedly saw and treated him. Records of exams, diagnoses, and medications tend to refute claims of deliberate indifference to medical conditions. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

4. *Specific Medical Care Claims*

Cortinas claims that doctors had to redo his cast. A mistake like this shows negligence or possibly gross negligence. Medical malpractice is not deliberate indifference. *Hare v. City of Corinth, MS*, 74 F.3d 633 (5th Cir. 1996).

3

Cortinas also claims the defendants refused or failed to do anything about his back injury and his torn rotator cuff. The medical records show that Cortinas did not suffer a separate back injury apart from his other injuries, which prison medical personnel did treat. (22-1, p. 8-9, 14-21). His claim about an untreated back injury boils down to a disagreement with the defendants' medical determination that there was no verifiable back injury which required medical care. Disagreement about the need for medical treatment does not state a claim for deliberate indifference. *Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Doctors treated Cortinas for his torn rotator cuff. (22-1, p. 2). They diagnosed him with a rotator cuff tear which was surgically repaired on September 8, 2006. *Id.*, p. 2-3. Doctors gave Cortinas medications and he received several follow-up appointments for this surgery. *Id.* On December 20, 2008, a doctor performed another surgery on his rotator cuff. *Id.*, p. 3. The records do not raise a material fact issue on Cortinas's claim that the defendants failed to provide medical treatment for a back injury or failed to reconstruct Cortinas's rotator cuff. His claim concerning the medication change from Tylenol 3 to over-the-counter Tylenol or aspirin is a mere disagreement with the defendants' medical determinations.

5. *Budgetary Concerns*

Cortinas claims that prison employees told him he would not receive surgery because there was no money to perform the surgery. This claim is unsupported. The employees mentioned by Cortinas have no budgetary or scheduling authority. (22-1, p. 3). One of the surgeries was cancelled because Cortinas drank water before the surgery. *Id.* The money for surgeries is part of the UTMB budget; it is not allocated or under the control of any prison employees. (22-1, p. 11). UTMB employees do the scheduling for surgeries; and scheduling is also not under the control of any prison employees. *Id.* Cortinas's unsupported, conclusory statements do not establish that the defendants denied him needed medical care based on budgetary concerns. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).

6. *Delay*

Cortinas claims delay in receiving some of his medical treatment. Cortinas has not shown with summary judgment evidence any substantial harm resulting from any delay. Cortinas has not raised a fact issue that harm, much less substantial harm, resulted from any delay. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-94 (5th Cir. 1993) (delay in medical care to a prisoner violates the Eighth Amendment

only when there is deliberate indifference which causes substantial harm).

### 7. *Medical Restrictions*

After his injury, Cortinas was under job and housing restrictions based on his medical conditions. (22-2, pp. 15-16; 22-3, p. 17; 22-4, p. 5, 16, 18-25; 22-5, pp. 1-4). His housing restriction expired in early January 2007. (22-4, p. 18-19). Officials reviewed and reinstated it in February 2007. (22-4, p. 20-23). This was based on Cortinas's scheduled surgery which was cancelled because he drank water. (22-1, p. 3; 22-1, p. 10). To show a constitutional deprivation concerning a job or housing assignment, the plaintiff must show that the work or housing significantly aggravated a serious medical condition and that prison officials were aware of the medical condition and ignored it. *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989). As with medical care claims, the plaintiff must show deliberate indifference. *Id.*, at 1246. Cortinas does not allege specific facts which show that the temporary lack of the housing restriction significantly aggravated a serious medical condition. Cortinas has not shown a constitutional violation concerning medical restrictions in his job or housing assignments.

### 8. *No Deliberate Indifference*

A prisoner claiming deliberate indifference to serious medical needs must allege facts showing that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Cortinas has not alleged facts showing this kind of behavior by the defendants, or any other prison or UTMB medical personnel. The record shows the absence of deliberate indifference because, among other things, Cortinas received medical treatment. *Banuelos*, 41 F.3d at 235.

Deliberate indifference requires a showing that a defendant was subjectively aware of and disregarded a risk of serious harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). Cortinas has not shown this. Where the medical records show consistent care, a claim that defendants were deliberately indifferent to his serious medical needs is without merit. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). Cortinas has not defeated defendants' summary judgment showing and has not shown deliberate indifference. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (the deliberate indifference standard is an "extremely high" one to meet).

9. *Qualified Immunity*

The defendants raise qualified immunity. To defeat qualified immunity, a plaintiff must show that: (1) he has asserted a violation of a constitutional right; (2) this right was clearly established at the time of the official's actions; and (3) the official's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995). Cortinas has asserted a violation of a constitutional right that was clearly established at the time of the official's actions. The remaining issue is whether the defendants's actions were objectively unreasonable. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

The summary judgment record shows that the defendants were not deliberately indifferent to Cortinas's safety nor to his medical needs. It follows that Cortinas has not shown that the defendants' conduct was objectively unreasonable in light of clearly established law and that the defendants are entitled to qualified immunity. Furthermore, the record does not raise a fact issue that any of the defendants knew that their behavior was deliberate indifference in violation of the Constitution. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001)) ("if an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity"). The record does not show that any defendants were plainly incompetent or knowingly violated the Constitution. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The defendants are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

10. *Conclusion*

The summary judgment record does not raise any facts material to Cortinas's claims. The defendants' motion for summary judgment (22) is granted.

Signed January 8, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge